UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KYLE MILBOURN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-701-WTL-TAB |
| ) | 1:07-cr-159-JDT-KPF |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ENTRY DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
AND DENYING CERTIFICATE OF APPEALABILITY**

This cause is before the Court on Petitioner Kyle Milbourn's motion for relief pursuant to 28 U.S.C. § 2255. The motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below. This Court further finds that a certificate of appealability should not issue.

**I.    BACKGROUND**

On March 12, 2006, after a night of drinking and watching movies, Milbourn and his friend, Kyle Shroyer, decided to build and burn a cross. They constructed a cross out of scrap lumber, loaded it into Milbourn's truck, and drove it to the home of Paula Thrash. Thrash is a white woman with three biracial children and the sister of Shroyer's live-in girlfriend, Hope Pierce. The children's grandfather, a black man, lived upstairs in a separate unit. After they arrived, Shroyer dug a hole and they both lifted the cross into it. Milbourn and Shroyer then took turns taking photos of each other pouring gasoline on the cross, lighting it, and posing in front of the burning cross, before fleeing the scene.

On November 28, 2007, after an investigation by the FBI, Milbourn was charged by indictment with four counts: "conspiracy to intimidate and interfere because of the race of the occupants, with the right to occupy their home; a substantive charge of intimidation; using fire to commit a felony; and witness tampering." *United States v. Milbourn*, 600 F.3d 808, 809-10 (7th Cir. 2010). Count Three of the indictment, using fire to commit a felony in violation of 18 U.S.C. § 844(h)(1), carried a mandatory minimum ten-year sentence.

Prior to trial, the government offered Milbourn an opportunity to enter into a plea agreement that would allow Milbourn to avoid the mandatory minimum ten-year sentence. The plea agreement contained the following language:

> On March 12, 2006, the defendant and his co-conspirator, Kyle Shroyer, burned a cross in the front yard of a mixed-race family, several feet from the family's home. The defendant knew that the home was occupied by the homeowner and her boyfriend, both of whom are white, and the homeowner's three biracial children, ages ten, six, and five months.
>
> In furtherance of the conspiracy, the defendant and his co-conspirator took the following actions, among others:
>
> 1) while at Shroyer's home, the defendant and Shroyer discussed plans to burn a cross;
>
> 2) the defendant and Shroyer put lumber, nails, a hammer, a shovel and a gasoline can into the back of Kyle Milbourn's truck;
>
> 3) the defendant and Shroyer drove to the victims' home on West Memorial Drive, Muncie, Indiana . . . in the early morning hours while most of the residents of the home were sleeping;
>
> 4) the defendant and Shroyer parked down the street from the victim[s'] home and carried the cross, shovel, and gas can to the home;
>
> 5) the defendant and Shroyer dug a hole in front of the victim[s'] residence, and erected an eight-foot cross in the yard;
>
> 6) the defendant and Shroyer poured gasoline on the cross and ignited it;

> 7) the defendant and Shroyer took pictures of themselves burning the cross;
>
> 8) while the cross was burning, the defendant and Shroyer ran down the street and through yards to evade the homeowner's boyfriend, who saw the fire and gave chase to the defendant and Shroyer;
>
> 9) the defendant and Shroyer returned to Shroyer's home and discussed the fact that they had just burned a cross at the victim[s'] home.
>
> 10) [t]he defendant burned the cross at the victims' home in order to intimidate them and interfere with their housing rights.

Respondent's Brief at Ex. 2. Milbourn did not accept the plea agreement and the matter proceeded to trial. After a jury trial, Milbourn was convicted on all four counts of the indictment and sentenced to 121 months in prison. *Milbourn*, 600 F.3d at 810. Shroyer, on the other hand, accepted a plea agreement and received a sentence of fifteen months in prison.

Thereafter, Milbourn appealed his conviction and his sentence to the Seventh Circuit on the following grounds:

> [T]he evidence was insufficient to support the jury finding (1) that he was motivated by the racial makeup of the people who lived in the Thrash home and (2) that the cross was burned to intimidate (or interfere), on account of race, with the Thrash family's right to occupy their home.

*Id*. Milbourn also argued that "the district judge should have disregarded the statutorily required mandatory minimum sentence of 10 years for the use of fire in [the] commission of a felony and imposed a lesser sentence by applying the 18 U.S.C. § 3553(a) factors." *Id*. at 812. The Seventh Circuit was not persuaded by Milbourn's arguments and it affirmed his conviction and sentence on April 7, 2010. Milbourn did not seek certiorari to the Supreme Court of the United States.

On May 23, 2011, Milbourn filed the instant motion seeking relief pursuant to 28 U.S.C. § 2255. Milbourn now claims that his conviction and sentence should be vacated because he

> received ineffective assistance of counsel during plea stages when [his] counsel erroneously advised him not to enter into a favorable plea agreement offered by

3

the government, a plea agreement that Milbourn would have otherwise entered, resulting in Milbourn being convicted at trial and receiving a much harsher sentence then [sic] he would have received had he accepted the plea offer.

Petitioner's Brief at 1. In support of his argument, Milbourn testifies as follows:

> 4.   . . . Because I had participated in the cross burning, I told my attorney . . . that I did not want to go to trial. In response, counsel informed me, "It's too late now, you don't have a choice. Prepare for the fight of your life." My attorney told me that he "could not allow" me to accept the Government's plea offer because I was not certain who lived in the house where the cross was burnt. Further, he told me that if I plead guilty, I would be committing the crime of perjury. Therefore, I believed I had no choice but to reject the offer.
>
> 5.   My attorney also explained to me that I would not receive 10 years imprisonment if I was convicted at trial because "there were ways around the mandatory" 10 year sentence, and that I "just had to give the judge a good reason" to sentence me below 10 years.
>
> 6.   Had my attorney correctly advised me that the court would have no choice but to sentence me to 10 years imprisonment if I was convicted at trial, I would have accepted the Government's plea offer. Had my attorney not told me that I would be committing perjury if I entered a plea of guilty, I would have accepted the plea offered by the Government. . . .

Petitioner's Motion at Ex. 1, ¶¶ 4-6. Milbourn's counsel confirmed that he "told Kyle Milbourn and his father Mike Milbourn that [he] would not stand next to Kyle Milbourn and allow him to admit facts under oath that were not true in order to reach an agreement with the government." Respondent's Brief at Ex. 2. Counsel further advised Milbourn that if he did not wish to accept the plea agreement, "his choices were either proceed to trial or admit guilt in open court." *Id*.

## II.   STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See e.g., Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief pursuant to § 2255 if a sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

impose . . ., or that . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow and limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

### III. DISCUSSION

The Government asserts two defenses in response to Milbourn's motion: (1) Milbourn's motion is untimely; and (2) Milbourn did not receive ineffective assistance of counsel. Both issues are addressed below.

#### A. Statute of Limitations

Pursuant to the applicable subsections of 28 U.S.C. § 2255(f), Milbourn had one year from the date his conviction became final to file the instant motion. "[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 524 (2003). In the present matter, the Seventh Circuit issued its decision in *Milbourn* on April 7, 2010. Milbourn's deadline for filing a petition for certiorari expired on July 6, 2010 (i.e., 90 days after entry of the Seventh Circuit's decision). Accordingly, Milbourn had until July 6, 2011 to file a motion pursuant to 28 U.S.C. § 2255. Because Milbourn filed the instant motion on May 23, 2011, within the one-year limitations period, his motion was timely filed.

#### B. Ineffective Assistance of Counsel

"[A] district court cannot reach the merits of an appealable issue in a § 2255 proceeding unless that issue has been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). However, claims of ineffective assistance of counsel

5

need not be raised on direct appeal and constitute an exception to the general rule of procedural default. *Massaro v. United States*, 538 U.S. 500 (2003). Therefore, Milbourn need not have raised the issue of ineffective assistance of counsel prior to the instant motion.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). The legal principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) apply "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler*, 132 S.Ct. at 1384. "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). With regard to the attorney's performance, "a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness . . . [i.e.,] 'reasonableness under prevailing professional norms.'" *Id*. (quoting *Strickland*, 466 U.S. at 687). With respect to the prejudice requirement, Milbourn "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In situations like this, where the alleged ineffective advice led to a plea offer's rejection,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court [,] . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

In short, Milbourn argues that his counsel's performance was deficient because he gave Milbourn bad advice during the plea bargaining process. According to Milbourn, his counsel told

6

him that if he "did not know who lived in the house where the cross was burned, Milbourn was not permitted to accept the Government's offer . . . [because he] would be committing the crime of perjury." Petitioner's Brief at 10. Milbourn further maintains that his counsel advised him that "he would not receive a 10-year sentence [if convicted at trial] because 'there are ways around the minimum sentence.'" *Id*. The Court does not agree that counsel's performance was deficient.

First, the evidence of record indicates that Milbourn was aware that he would be sentenced to a minimum of ten years in prison if convicted of using fire in the commission of a felony. In this regard, during pre-indictment plea negotiations in August 2007, Milbourn's counsel provided him with a memo stating that he believed Milbourn "would likely be convicted on all three counts,"[1] and that Milbourn had "little to no chance of being successful at trial." Respondent's Brief at Ex. 2. The memo also stated that a violation of 18 U.S.C. § 844(h) was "punishable by a 10 [year] *mandatory* sentence." *Id*. (emphasis added). Moreover, Milbourn's testimony at the sentencing hearing alluded to the ten-year mandatory minimum sentence. During the hearing, he stated:

> [I]f I would have just signed a piece of paper – lied and signed that piece of paper, I could have took the easy way too and I couldn't [sic] . . . I know now and I knew then what I was looking at was this right here that you put up here.[2] I know you're going to sentence me to at least 10 years in prison.

Sentencing Transcript at 86-87.

Second, the record indicates that Milbourn maintained throughout the proceedings that he did not know who lived in the home where he and Shroyer burned the cross. The FBI's notes from Milbourn's pre-indictment proffer session state that "Milbourn was unable to recall why

---

[1]At that time, witness tampering had not been alleged.

[2]The statutory language of § 844(h), which included the mandatory minimum ten-year sentence, was projected on a screen in the courtroom during Milbourn's testimony at the sentencing hearing.

7

they built a cross, where they built a cross, how they picked the house to burn the cross, how they got to the house, or who lived in the house. Milbourn stated they just picked a house with a good escape route." Respondent's Brief at Ex. 1. The notes further provide that Milbourn "was unaware that there were bi-racial children at the house." *Id*. Additionally, at Milbourn's sentencing hearing, he testified that he was not familiar with the house. He stated, "I wasn't under the impression it was anybody's house. It was dark and it . . . looks like a rundown garage." Sentencing Transcript at 84. As noted above, he also indicated during the sentencing hearing that he would have had to lie in order to accept the Government's plea agreement – "[I]f I would have just signed a piece of paper – lied and signed that piece of paper, I could have took the easy way too [like Kyle Shroyer,] and I couldn't [sic]." *Id*. at 86-87. Even now, on the instant § 2255 motion, Milbourn does not admit that he knew who lived in the Thrash home or that his actions were racially motivated. This fact, however, was necessary to the plea agreement presented by the Government.

Under the terms of the proposed plea agreement, the Government agreed to dismiss Count Three, which carried a mandatory minimum ten-year sentence, in exchange for a guilty plea to the conspiracy charge. Thus, for Milbourn to accept the specific plea agreement that was offered by the Government, he had to admit, under oath before the Court, that he "knew that the home was occupied by the homeowner and her boyfriend, both of whom are white, and the homeowner's three biracial children, ages ten, six, and five months," and that he "burned the cross at the victims' home in order to intimidate them and interfere with their housing rights." Respondent's Brief at Ex. 2.

There is also evidence that Milbourn asked the Government to remove the provisions regarding the victims' race, but that the Government refused. In this regard, Milbourn's father testified at the sentencing hearing as follows:

> I know from conversations that [Milbourn] told me . . . he wanted to sign the plea agreement if you would change some wording in it, and it was simple wording that he did not know who lived there and – he was racially motivated and that's why he did it, and he asked you [the AUSA] to change the wording of that and you said no, I couldn't get that pushed through.

Sentencing Hearing at 75. Thus, Milbourn's knowledge regarding the occupants of the home was essential to the Government's proposed plea agreement.

Because Milbourn did not know who lived in the home, his counsel advised him that he would be committing perjury if he accepted the plea agreement. Milbourn followed his counsel's advice and proceeded to trial. Milbourn now claims that he wanted to accept the offer from the Government and that he would have accepted the offer from the Government, but for his counsel's advice. In essence, Milbourn argues that his lawyer was ineffective for making him tell the truth and that his lawyer should have instructed him to lie because a jury was going to find him guilty regardless of whether he knew who lived in the home. As a matter of law, however, Milbourn's counsel's advice was legally accurate and not unreasonable.

If Milbourn did not know who lived in the home, and thus, was unable to truthfully accept the specific language in the plea agreement offered by the Government, Milbourn was stuck between a rock and a hard place. That, however, does not mean his counsel's performance (i.e., advising his client to be truthful) was deficient. Counsel's representation of Milbourn was not, therefore, ineffective assistance of counsel.[3]

---

[3] Because Milbourn has not established that his counsel's performance was deficient, this Court need not and does not address whether Milbourn was prejudiced by his counsel's actions.

IV.     CONCLUSION

For the foregoing reasons, Milbourn's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**.

V.     CERTIFICATE OF APPEALABILITY

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Milbourn has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability as to the instant claims.

SO ORDERED: 03/01/2013

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.